UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Anthony Morganfield, | Case No. 17-cv-304 (WMW/FLN) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Warden M. Rios, Federal Bureau of Prisons | |
| Respondent. | |

Anthony Morganfield, *pro se*, for Petitioner.
Ana Voss, David Fuller, and D. Gerald Wilhelm, Assistant United States Attorneys, for Respondent.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on Petitioner Anthony Morganfield's Petition for writ of habeas corpus pursuant to 28 U.S.C § 2241 (ECF No. 1). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that Morganfield's Petition be **DENIED**.

### I. FACTUAL BACKGROUND

Morganfield is a federal inmate confined to the Federal Prison Camp in Duluth, Minnesota. *See* ECF No. 11 at 3. He is serving a 108-month prison term for possession with intent to distribute an unspecified quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c). *Id*. Morganfield's expected release date is January 15, 2020. *See id*.

On November 25, 2015, a Bureau of Prisons ("BOP") officer conducted a search of the cell belonging to Morganfield and three other inmates. *See* ECF No. 11, Ex. D at 1. The officer found a cellular phone, with a sim card and charger, attached with a magnet to the bottom of an empty

locker in the common area of the cell. *Id.* As a result, the officer issued Incident Report 2488118 to Morganfield for violation of Code 108A, the possession, manufacturing, and introduction of a hazardous tool (cell phone). *Id.* at 1–2; ECF No. 11, Ex. F. The Unit Disciplinary Committee ("UDC") investigated the incident, provided Morganfield a copy of the incident report, and advised him of his rights during the disciplinary proceedings. ECF No. 11, Ex. D at 2. During the investigation, Morganfield stated "I have no knowledge of that cell phone." *Id.* Morganfield had not received any incident reports prior to this incident, and states that he was assigned to the cell less than a month before the incident. *Id.*; ECF No. 1 at 2. The UDC referred the incident to the Discipline Hearing Officer ("DHO") for further proceedings. *See* ECF No. 11, Ex. D and E.

On December 7, 2015, the DHO held a hearing on Incident Report 2488118. *See* ECF No. 11, Ex. G. At the hearing, Morganfield was given the opportunity to call witnesses and request the support of a staff representative. ECF No. 11, Ex. F. Morganfield declined the support of a staff representative and did not to call any witnesses. *Id.* at 1. The DHO found that Morganfield violated Code 108A and sanctioned him to a loss of forty-one days of good time, and revoked his phone privileges for six months and visitation and commissary for ninety day. ECF No. 11, Ex. E. at 2. The DHO based its decision on the incident report, photographs depicting the cellular phone in the common area of the cell, Morganfield's statement that he had no knowledge of the cellular phone, and his failure to bring forth a defense to the charge, or provide a written statement for consideration. *Id.* The DHO found that Morganfield's failure to present any defense weakened his credibility. *Id.* The DHO also noted that statements of responsibility are only credible when they are corroborated by evidence, and found that there was no corroborating evidence in this case. *Id.*

The DHO's decision was delivered to Morganfield on December 10, 2015. *Id.* at 3. On

December 21, 2015, Morganfield filed a Regional Administrative Remedy appealing the DHO's decision. ECF No. 2, Ex. D. On February 19, 2016, the Regional Director denied Morganfield's appeal finding that there was no corroborating evidence to support another inmates statement of responsbility, that Morganfield had a responsibility to ensure all common areas were free of contraband, and that photographs of the cellular phone in the common area of the cell supported the DHO's decision that Morganfield committed the prohibited act. ECF No. 2, Ex. E.

According to Morganfield, on March 9, 2016, he appealed the Regional Director's response to the Central Office. ECF No. 1 at n.2; ECF No. 2 at 3 and Ex F. Respondent asserts that there is no record that Morganfield appealed to the Central Office. *See* ECF No. 10.

On March 30, 2016, Morganfield wrote a letter to the Central Office regarding the status of his appeal, and included a handwritten statement from another inmate taking responsibility for the cellular phone. ECF No. 2, Ex. G. Having received no response, on May 11, 2016, Morganfield contacted the Warden regarding his appeal. *Id.* at Ex. H. Morganfield states that he was informed by the office of the Warden to include an administrative remedy number to his inquiry, and on May 24, 2016, he sent another inquiry to the Warden including his administrative remedy number. *See id.* at Ex. I. On May 26, 2016, the Warden's Secretary responded to Morganfield's inquiry and informed him that his regional appeal was denied on February 19, 2016, but made no mention of his appeal to the Central Office. *Id.* at Ex. J. Still having received no response, Morganfield states that on June 21, 2016, he met with his case manager regarding his appeal to the Central Office, and she informed him that the Central Office received his appeal, was backed up, but that his appeal would most likely be denied. ECF No. 2 at 3. On June 28, 2016, Morganfield again wrote to the Warden regarding his appeal to the Central Office. *See id.* at Ex. K. On December 5, 2016, Morganfield

received a response from the Associate Warden informing him that, as of that date, his appeal had not been accepted into the system by the Central Office. *Id.* at Ex. L. Further, that if he wanted more information that he could write to the Central Office. *Id.*

On January 30, 2017, Morganfield filed the instant Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See* ECF No. 1. Morganfield asks the Court "to issue an order directing the Acting Warden of Duluth Federal Prison Camp to withdraw and remove from the records the decision to penalize [him] for alleged violation of Disciplinary Code, Section 108A" and for the "immediate removal of sanctions respectively, including but not limited the loss of 41 days of Good Conduct Time." *Id.* at 1. Respondent counters that Morganfield's Petition should be dismissed for failure to exhaust administrative remedies or denied because Morganfield has received all the due process to which he is entitled to in an inmate disciplinary matter and sufficient evidence supports the determination that he was responsible for the prohibited acts. *See generally* ECF No. 10.

## II. CONCLUSION OF LAW

To obtain habeas relief under 28 U.S.C. § 2241, a petitioner must demonstrate that they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Rose v. Hodges*, 423 U.S. 19, 21 (1975). 28 U.S.C. § 2241 is the appropriate statute to request habeas relief for a petitioner, such as here, challenging a disciplinary hearing impacting the loss of his accrued good time and potentially the duration of his confinement. *See Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973); *see, e.g.*, *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (a writ of habeas corpus *is not the* proper remedy "if the prisoner *is not challenging* the validity of his conviction or the length of his detention, such as a loss of good time" accrual)

4

(emphasis added). Deprivation of an inmate's good conduct time for disciplinary reasons "implicates a liberty interest that is protected by the Due Process Clause." *Espinoza v. Peterson*, 283 F.3d 949, 951–52 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555–58 (1974))

### 1. Exhaustion of Administrative Remedies

Before a federal prisoner can file a writ of habeas corpus under 28 U.S.C. § 2241, he must exhaust all administrative remedies available to him within the prison system. *See Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). The BOP has a multi-tiered administrative remedy program by which an inmate may seek "formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §§ 542.10(a). The regulations prescribe four steps that must be taken in order to satisfy the exhaustion requirement: (1) an inmate must first present his claim to an appropriate prison staff member by submitting a request for informal resolution; (2) if the claim is not resolved to the inmate's satisfaction, he must then present a formal written claim to the warden (Form BP-9); (3) if the prisoner is not satisfied with the warden's response, he must appeal to the Regional Director (Form BP-10); and (4) after appeal to the Regional Director, if the prisoner is still dissatisfied, he must take a final appeal to the General Counsel in the Central Office (Form BP-11). *See* 28 C.F.R. §§ 542.10–.19. To fully exhaust their administrative remedies, federal prisoners must complete each of these four steps. *Id.* The exhaustion requirement, however, is not a question of jurisdiction. *Leuth v. Beach*, 498 F. 3d 795, 797 n.3 (8th Cir. 2007). Courts may excuse a failure to exhaust administrative remedies where exhaustion would be futile. *See Elwood v. Jeters*, 386 F.3d 842, 844 n.1 (8th Cir. 2004).

Here, Morganfield asserts that he submitted his final appeal to the Central Office on March 9, 2016. *See* ECF No. 1. He states that the Central Office has not responded to his appeal because it is backed up, and that he was informed by his case manager that his appeal would most likely be denied. *Id.* Morganfield asks the Court to excuse his failure to exhaust on futility grounds. *Id.* Respondent counters that there is no record that Morganfield filed his appeal to the Central Office and argues that Morganfield's Petition should be dismissed for failure to exhaust administrative remedies. *See* ECF No. 10.

The Court finds that Morganfield has exhausted his administrative remedies. While Respondent asserts that there is no record of Morganfield's appeal, the absence of a record simply shows that Morganfield's appeal was never docketed; this could be the result of a clerical error or a technical malfunction. The record does show that Morganfield made several attempts to complete each step of the prison's administrative remedy. For example, Morganfield sent a letter to the Central Office on March 30, 2016, regarding the status of his appeal and attached a statement from another inmate taking responsibility for the cellular phone. Based on the facts in the record, the Court finds that Morganfield has exhausted his administrative remedies, and we will address Morganfield's petition on the merits.[1]

---

[1] Even if the Court was to find a factual dispute between the parties on whether Morganfield exhausted his administrative remedies, because the appropriate disposition in this matter is clear, it is proper for the Court to address Morganfield's petition on the merits. *See Stewart v. Cruz*, No. 08-6085 (RHK/SRN), 2009 WL 1607579, at *4 (D. Minn. June 8, 2009); *Augare v. True*, No. 16-4126 (DWF/KMM), 2017 WL 3616433, at *2 (D. Minn. June 26, 2017) (citing *Santiago-Lugo v. Warden*, 785 F.3d 467, 475 (11th Cir. 2015) (finding that "a court may skip over the exhaustion issue if it is easier to deny . . . the petition on the merits without reaching the exhaustion question.")).

**2. Due process**

A prisoner must be afforded at least some procedural due process protections before being deprived of good conduct time. *See Wolff*, 418 U.S. at 557. A prisoner, however, is not entitled to the full panoply of procedural rights that accompanies a criminal prosecution. *See id.* at 566. To satisfy the constitutional requirements of due process, prisoners facing loss of good conduct time must be given: 1) advance written notice of the charges; 2) an impartial hearing body; 3) an opportunity to present witness testimony and other evidence; 4) assistance for illiterate inmates or in complex cases; and 5) a written explanation of the ultimate resolution of the charges. *See Espinoza*, 283 F.3d at 951–52.

Here, the record is clear that Morganfield received at least the minimal procedural benefits prescribed by *Wolff* during his disciplinary proceedings. The record shows that on December 10, 2015, Morganfield received a copy of Incident Report 2488118, providing him with advanced written notice of the charges against him. *See* ECF No. 11, Ex. E at 3. On December 7, 2015, the disciplinary hearing was conducted by a certified DHO, who is an impartial fact-finder. Morganfield was present during the DHO proceedings, was advised of his rights prior to the hearing, and was given the opportunity to request the support of a staff representative and call witnesses. *See* ECF No.11, Ex. E; *see also* ECF No. 2, Ex. F. Finally, Morganfield was provided a written report of the DHO's decision which outlined the evidence the DHO relied upon, and provided the reasons for his disciplinary sanctions. *Id.* Accordingly, the Court finds that Morganfield was afforded sufficient procedural due process.

### 3. Sufficiency of Evidence

To satisfy the requirements of due process, the record must only include some evidence that supports the disciplinary decision. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Some evidence" can include statements or testimony, a written account of the incident, or the incident report. *See id.* at 456–57. In *Hill*, the United States Supreme Court emphasized that the decision of a prison disciplinary officer after a disciplinary hearing was entitled to considerable deference. *Id.* at 454 (the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record"). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *See id.* at 455–56. Rather, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. *Id.*; *see also Goff v. Burton*, 7 F.3d 734, 739 (8th Cir.1993).

A prison guard's testimony or incident report is sufficient to provide some evidence. *Hill*, 472 U.S. at 456. Courts are not part of the appellate process for prison discipline proceedings. *See Courtney v. Bishop*, 409 F.2d 1185, 1187 (8th Cir. 1969). Due process "does not require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456; *see also Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir.1996) (if there is some evidence to support a disciplinary committee's decision, the requirements of procedural due process have been met; the decision can be upheld even if the evidence supporting the decision is "meager").

The "some evidence" standard is met in this case. The DHO's determination that Morganfield violated Code 108A was based on the incident report, and the photographs taken of the cellular phone in the common area of Morganfield's cell. *See* ECF No. 2, Ex. B at 2. In the instant

Petition, Morganfield does not dispute that there is 'some evidence' in the record to support the DHO's decision, but instead argues that the United State Supreme Court's decisions in *United States ex rel. Tisi v. Tod*, 264 U.S. 131 (1924), and *United States ex. Rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103 (1927) require something more. *See* ECF No. 15 at 5,

The Supreme Court in *Hill*, citing *Tisi* and *Vajtauer*, held that due process is satisfied "if some evidence supports the decision by the prison disciplinary board to revoke good time credits" and declined to adopt a more stringent evidentiary standard. *Hill,* 472 U.S. at 455–56. In doing so, the Court found that due process "does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board," but instead "requires only that there be some evidence to support the findings made in the disciplinary hearing." *Id.* at 457. Therefore, while the evidence relied on by the DHO does not necessarily preclude the conclusion that the cellular phone belonged to someone other than Morganfield, or that Morganfield was not aware of its presence in the common area of the cell, it does satisfy the some evidence standard to support the its finding that Morganfield committed the prohibited act.

Morganfield also argues that he should not be sanctioned for the cellular phone because another inmate took responsibility for the phone during the disciplinary proceedings. *See* ECF Nos. 1 and 15. Morganfield asks the Court to reject what has been referred to as the collective responsibility theory because it essentially creates a strict liability offense. In *Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011), the Eighth Circuit applied the collective responsibility theory to find two inmates collectively culpable for contraband found in a cell shared by six other inmates. The court stated that the collective responsibility theory was accepted by this circuit in *Mason v. Sargent*, 898 F.2d 679 (8th Cir. 1990) when an inmate was sanctioned based on evidence found in

9

a locker box that he shared with another inmate who admitted responsibility. The court also noted that other jurisdictions have relied on the collective responsibility theory as 'some evidence' to support discipline being imposed on prisoners based on contraband found in shared areas. *See Flowers*, 661 F.3d at 980–81 (citing *Shelby v. Whitehouse*, 399 Fed. Appx. 121, 122 (7th Cir. 2010); *Flannagan v. Tamez*, 368 Fed. Appx. 586, 588 n.5 (5th Cir. 2010); *Santiago v. Nash*, 224 Fed. Appx. 175, 177 (3d Cir. 2007); *Hamilton v. O'Leary*, 976 F.2d 341, 344–45 (7th Cir. 1992)).

As the United States Supreme Court noted in *Hill,* violations of prison rules are not criminal convictions, and do not require the same amount of evidence. *See* 472 U.S. at 456 ("Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.") (internal citations omitted).  Here, the DHO would have set aside the collective responsibility of the inmates if there was some corroborating evidence to support the other inmates statement of responsibility. ECF No. 2, Ex. B at 2. Because the DHO found that there was no corroborating evidence, it held that the greater weight of the evidence supported a finding that Morganfield committed the prohibited acts. *Id*.

Lastly, Morganfield's assertion that a review of the sim card would have shown that he never used the cellular phone, misses the point. The Court's review of the DHO's decision is simply to determine whether there is 'some' evidence to support the DHO's determination. Because the record contains some evidence to support the DHO's decision, the Court finds that Morganfield's disciplinary proceedings satisfied due process, and his petition should be dismissed.

## IV. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Morganfield's Petition for writ of habeas corpus under 28 U.S.C § 2241 (ECF No. 1) be **DENIED**.

DATED: August 28, 2018         *s/Franklin L. Noel*
                                FRANKLIN L. NOEL
                                United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

A party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 7 days after being served a copy of the Report and Recommendation. A party may respond to those objections within 7 days after being served a copy of the objections. All objections and responses must comply with the word or line limits set for in LR 72.2(c).